IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| **TAMARA JOHNSON,** *et al*<br>    Plaintiffs<br>    v.<br><br>**CITY OF ANNAPOLIS**<br>    Defendant-Third Party Plaintiff<br><br>  The City of Annapolis<br>  A municipal corporation<br>  160 Duke of Gloucester Street<br>  Annapolis, Maryland 21401<br>  Anne Arundel County<br><br>    v.<br>**THE UNITED STATES OF AMERICA;**<br>**UNITED STATES DEPARTMENT OF**<br>**HOUSING AND URBAN**<br>**DEVELOPMENT; And**<br>**MARCIA L. FUDGE in her official**<br>**capacity as Secretary of the United States**<br>**Department of Housing and Urban**<br>**Development.**<br><br>  The Associate General Counsel for<br>  Litigation, Office of Litigation<br>  U.S. Department of Housing and Urban<br>  Development<br>  451 Seventh Street, S.W.<br>  Washington, D.C. 20410<br><br>    Third-Party Defendants. | **Civil Action No. 1:21-cv-01120-CCB** |

## SECOND AMENDED THIRD-PARTY COMPLAINT OF DEFENDANT CITY OF ANNAPOLIS AGAINST THIRD-PARTY DEFENDANT DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Defendant/Third-Party Plaintiff, the City of Annapolis (the "City"), by and through the undersigned counsel, and pursuant to written consent from Third-Party Defendant the United States Department of Housing and Urban Development in accordance with Federal Rule of Civil

1

Procedure 15, brings this Second Amended Third-Party Complaint against Third-Party Defendant the United States Department of Housing and Urban Development and Marcia L. Fudge, in her official capacity as Secretary of the United States Department of Housing and Urban Development (individually and collectively "HUD"), under Federal Rule of Civil Procedure 14 and 15 and states as follows:

## PRELIMINARY STATEMENT

Plaintiffs Tamara Johnson, et al. as a class, filed this action against the City alleging violations for non-compliance with The Housing Act of 1937, 42 U.S. § 1437 *et seq.*, and violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil Rights Act of 1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs allege that the property conditions where they reside are poor and require repair and maintenance, and as a result, they have suffered severe health issues. The properties complained of are owned by the Third-Party Defendant Housing Authority of the City of Annapolis ("HACA"), a public housing authority ("PHA") responsible for the properties' maintenance and management. Plaintiffs allege that the City should have discovered the poor condition of the properties, but it failed to inspect the properties and failed to require HACA to make the required repairs.

HACA, like all other PHAs, operates under HUD's control and direction. The Housing Act of 1937, 42 U.S. § 1437 *et seq.,* as amended and the Housing and Community Development Act of 1974 (individually and collectively "the Housing Act"), requires HUD to use its funding to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families. 42 U.S.C. § 1437(a). According to the Act, HUD, in in addition to other regulations, controls PHAs through its Annual Contributions Contract (hereinafter referred to as

"ACC"). 42 U.S.C. § 1437g. HACA receives federal funding from HUD to maintain and manage its properties. The City contends that Plaintiffs complained of conditions resulting from the policies and actions of HUD and HACA in their failures to properly fund the properties and to maintain them in a safe and sanitary condition, and comply with their own administrative procedures and other laws. The City seeks declaratory and injunctive relief against HUD because of its failure to act as required by applicable law, in discriminating against the City, HACA, and the Plaintiffs, by its insufficient funding and failure to enforce its own maintenance requirements for Plaintiffs' units, and to cease HACA's operations in order to assure safe and sanitary housing.

## PARTIES

1. Defendant and Third-Party Plaintiff City of Annapolis is a political subdivision and a municipal corporation in Maryland.

2. Third-Party Defendant HUD is an independent federal agency.

3. Third-Party Defendant Marcia L. Fudge, in her official capacity, is the Secretary of HUD.

## JURISDICTION AND VENUE

4. This Court has federal subject matter jurisdiction in this matter under 28 U.S.C. § 1331 because Plaintiffs have asserted claims against Defendant/Third-Party Plaintiff alleging violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil Rights Act of 1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; the Administrative Procedures Act, 5 U.S.C. §§ 702 and 706(a) and (b); and the Equal Protection Clause of the Fifth Amendment to the United States Constitution.

5. This Court has jurisdiction pursuant to 5 U.S.C. §§ 702, 703, 704, 706, and 28 U.S.C. §§ 1331, 1361, and 2201.

6. This Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702 and 706, 28 U.S.C. §§ 1361 and 2201-2202, and its inherent equitable powers.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e). Defendants are United States agencies or officers sued in their official capacities.

8. The Plaintiffs and the City are residents of this judicial district, and a substantial part of the events or omissions giving rise to this case occurred within this district.

9. The City as itself and as parens patriae brings this action to redress harm to it, Plaintiffs, and the residents of the City under 5 U.S.C. § 702 due to the policies and actions of HUD.

## ADDITIONAL FACTUAL ALLEGATIONS

10. On May 7, 2021, Plaintiffs Tamara Johnson, et al. as a class, filed this action against the City alleging violations of the Fair Housing Act as amended, 42 U.S.C. § 3601, et seq., the Civil Rights Act of 1866, 42 U.S.C. §§ 1982, 1983, 1985, and 1986; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

11. Plaintiffs allege to be predominately African American residents of the housing developments owned and operated by HACA.

12. Plaintiffs allege that the property conditions where they reside are poor and require repair and maintenance, and as a result, they have suffered severe health issues.

13. The properties complained of are owned by the Third-Party Defendant Housing Authority of the City of Annapolis ("HACA"), a public housing authority ("PHA") that is responsible for the properties' maintenance and management.

14. Plaintiffs allege that the poor property conditions should have been discovered by the City, which failed to inspect the properties and require HACA to make the required repairs.

15. HACA, like all other PHAs, operates under HUD's control and direction.

16. The Housing Act of 1937, 42 U.S. § 1437 et seq., as amended by the Act, provides that HUD is to fund PHAs and political subdivisions to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families. 42 U.S.C. § 1437(a)

17. Pursuant to the Act, HUD, and other regulations, HUD and PHAs enter into an ACC.

18. In accordance with the ACC, HACA receives federal funding for the maintenance and management of its properties. The City contends that the Plaintiffs' complained-of conditions result from the policies, actions, and inactions of HUD and HACA demonstrated by their failures to properly fund the properties and HACA's failure to maintain them in a safe and sanitary condition, and not because of the City.

19. The Housing Act requires HUD to use its funding to help the "states" and cities, including Maryland and the City, to remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families.

20. The Housing Act directs HUD to establish standards for PHAs' costs of operation and reasonable projections of income. This calculation takes into account the character and location of such PHAs as well as the characteristics of the families served or the costs of

providing comparable services as determined by a formula representing the operations of a prototype well-managed PHA.

21. Under HUD's regulations and the ACC, HUD is required to inspect the HACA properties to assure compliance with the requirements that the properties are operated in a decent, safe, and sanitary manner. *See* U.S. Housing Act. 42 U.S.C. § 1437d(f)(3); ACC ¶ 14.

22. The ACC defines HACA's obligations and responsibilities under the contract. The ACC states as its Mission that:

> a. HUD shall administer its Federal public housing program for the provision of decent, safe, and sanitary housing to eligible families in accordance with the CACC and all applicable HUD Requirements. HUD shall provide maximum responsibility and flexibility to HAs in making administrative decisions within all applicable statutes, executive orders, regulations and this ACC. HUD shall provide annual contributions, in the form of grants, to the HA in accordance with all applicable statutes, executive orders, regulations, and the CACC.
>
> b. The HA shall use Program Receipts to provide decent, safe, and sanitary housing for eligible families in compliance with the Act and all HUD requirements. HA shall at all times develop and operate public housing projects in a manner that promotes serviceability, economy, efficiency, and stability of the projects, and the economic and social well-being of the tenants.

ACC at 1 Mission.

23. HUD conducts an annual Public Housing Assessment System ("PHAS") evaluation to assess HACA's physical conditions, financial condition, management, and capital funding. *See generally* 24 C.F.R. Part 902.

24. HUD physically inspects each property and scores them.

25. Excessive deficiencies can lead to adverse consequences ranging from more frequent inspections to the appointment of a receiver for PHAs like HACA. 24 C.F.R. §§ 902.13, 902.73, 902.75, 902.83.

26. Every year, HUD inspect the living conditions at HACA through PHAS inspections. *See generally* 24 C.F.R. Part 902.

27. The result of a PHAS assessment/evaluation is a "PHAS score" of up to 100 points. 24 C.F.R. § 902.9.

28. A PHA's overall PHAS score determines whether the housing agency will be designated as a "high performer," a "standard performer," a "substandard performer," or a "troubled performer." 24 C.F.R. §§ 902.9, 902.11.

29. HUD gives the most weight to the physical conditions component of PHAS inspections. 24 C.F.R. § 902.9.

30. "The objective of the physical condition [assessment] is to determine whether a [public housing agency] is meeting the standard of decent, safe, sanitary housing in good repair." 24 C.F.R. § 902.20(a).

31. HACA has been regularly placed on HUD's troubled property list. Even though HACA failed HUD's inspections, HUD allowed HACA to continue to maintain the properties with unsafe, unsanitary, and in poor conditions.

32. HUD maintains the power to enforce HACA's compliance to provide safe housing, including taking the HACA property and placing it under receivership management. *See* ACC ¶ 14.

33. HUD has the power to declare a PHA in substantial default of its Annual Contributions Contract and take control of the PHA under the powers granted to the HUD Secretary under 42 U.S.C. § 1437d(j)(3)(A)(ii), (C).

34. Because HUD empowers HACA to rent to low-income tenants in exchange for HUD's funding, the City's inspections could not prevent HACA from operating.

35. HUD has the authority to appoint a receiver to take over HACA and assure that the properties are properly maintained, but the City does not have the same authority. 24 C.F.R. §§ 902.13, 902.73, 902.75, 902.83.

36. HUD has failed to enforce its duty to assure that HACA provides the Plaintiffs with safe and sanitary housing.

37. HUD has allowed HACA to operate with deficit funding and did not provide HACA or the City with sufficient funds for safe and sanitary housing.

38. Because of the race and socioeconomic status of the Plaintiffs and other similar residents of the City, HUD has acted in a discriminatory manner exacerbating a housing crisis in the City.

39. According to Plaintiffs, and upon information and belief, the racial makeup and statistical profile of public housing is as follows: "The Housing Authority of the City of Annapolis has six low-income housing properties: Bloomsbury Square; Harbour House; Newtowne Twenty; Eastport Terrace; Robinwood; and Morris H. Blum Senior Apartments. Morris H. Blum Senior Apartments is restricted to older and disabled persons. Racial composition of these low-income housing developments is not directly available from public sources, but the racial composition of the Census block (the immediate neighborhood) where each property is located can be determined from the 2010 Census. The Census blocks for each of the six low-income housing properties are identified using the street addresses listed by the Housing Authority of the City of Annapolis. The Census Bureau's American Factfinder street address function identifies Census blocks based on street addresses." Plaintiff's ("Pl.'s") Compl. at ¶ 44-45.

40. "Five of the Housing Authority properties are located in majority Black Census blocks. Three of the Housing Authority properties (Bloomsbury Square, Newtowne Twenty, and Robinwood) are in blocks where **more than 90% of residents are Black.** Whites comprise 58.9% of the residents in the block where the Morris H. Blum Senior Apartments is located. 16.3% of the residents are Black and 21.3% of the residents are Latino.[1] Blum is the only Housing Auth6ority property designated for seniors and disabled people, and it is the only Housing Authority property located in a majority White Census block." Pl.'s Compl. at ¶ 46.

41. "The six Housing Authority properties are in blocks where Blacks comprise 67.5% of the residents, Whites comprise 22.6% of the residents, and Latinos comprise 5.7% of the residents. In contrast, in the City of Annapolis as a whole, Whites accounted for 53.5% of residents, Blacks accounted for 25.7% of residents, and Latinos accounted for 16.8% of residents. Residents of the six Housing Authority properties are disproportionately Black. The proportion of Black residents in these properties is 2.6 times greater than the proportion of Black residents in the City of Annapolis." Pl.'s Compl. at ¶ 47.

42. "The five Housing Authority properties **not** designated as senior and disabled housing are in blocks where Blacks comprise 71.5% of the residents, Whites comprise 19.7% of the residents, and Latinos comprise 4.4% of the residents. As noted above, Whites accounted for 53.5% of residents in the City of Annapolis, Blacks accounted for 25.7% of residents, and Latinos accounted for 16.8% of residents. Residents of the five Housing Authority properties not designated as senior housing are disproportionately Black. The proportion of Black residents in the neighborhoods where these properties are located is 2.8 times greater than the proportion of Black residents in the City of Annapolis." Pl.'s Compl. at ¶ 48.

43. "*The City of Annapolis Five Year Consolidated Housing and Community Development Plan Federal Fiscal Year 2015-2019* identifies the racial distribution of residents in the public housing properties. Of the 831 public housing units, 759 (91.3%) were identified as occupied by Blacks and 58 (7.0%) were occupied by Whites. . . . The race of the Hispanic residents is not reported. This report was submitted in May 2015, so these numbers presumably represent the public housing population in 2015. In 2010, Whites accounted for 53.5% of residents in the City of Annapolis, Blacks accounted for 25.7% of residents, and Latinos accounted for 16.8% of residents. Based on the City's report and the 2010 Census data, the proportion of Black residents in these properties is 3.6 times greater than the proportion of Black residents in the City of Annapolis." Pl.'s Compl. at ¶ 49.

44. HACA operated under the deficit funding method, and HUD refused to approve certain expenses necessary for adequate and efficient, safe, and sanitary public housing in the City.

45. Pursuant to the City's municipal code, dwelling units offered for rent in the City of Annapolis must comply with the various facility, equipment, and maintenance requirements contained therein.

46. If, upon inspection, a dwelling unit fails to comply with the City's minimum standards for facilities, equipment, or maintenance, the owner of the dwelling unit will be administratively required or judicially mandated pursuant to municipal citation to make corrections and/or take abatement measures in order to bring the dwelling unit into compliance with the City's code.

47. A property owner's failure to comply with the City's minimum standards for facilities, equipment, and maintenance requirements will warrant municipal infraction citations against the property owner, which are filed in the District Court of Maryland.

48. HUD's failure to sufficiently fund HACA has prevented, and continues to prevent, HACA from being able to pay for correction and abatement of those conditions at HACA's properties which, upon inspection, violate the City's facility, equipment, and maintenance requirements and have caused Plaintiffs to as a last resort pursue this meritless litigation against the City.

49. HUD's failure to sufficiently fund HACA has caused the facilities, equipment, and maintenance at HACA properties to remain in a constant state of violation of the City's minimum requirements regarding the same which has, during the period complained of by Plaintiffs, made the inspections regime irrelevant to resolving claims by any potential claimants, including those in the instant matter

50. As a result of HUD's actions and inaction, the City's inspection regime and enforcement tools are meaningless. The conditions at HACA properties continue to degrade whether or not inspections at HACA properties are conducted.

51. HUD has allowed HACA to maintain the housing units in an unsafe and unsanitary manner due to a) its discriminatory practices, and b) violations of the Housing Act and other laws.

52. Because of the race and economic levels of the Plaintiffs, HUD allowed HACA to avoid HUD's maintenance and inspection policy.

53. Because of the race and economic levels of the Plaintiffs, HUD allows HACA to continuously place City residents in its properties that were below the City's and HUD's standards.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of 42 U.S.C. § 1437, et seq.)

54. The City repeats and realleges the preceding paragraphs as if fully set forth herein.

55. The Housing Act requires HUD to use its funding to help remedy unsafe and unsanitary housing conditions and the shortage of decent housing for low-income families. 42 U.S.C. § 1437(a).

56. The Housing Act provides that HUD must provide funds to assist States, State political subdivisions, and PHAs with sufficient funds to provide decent and safe housing free from unsafe conditions.

57. According to the Act, HUD, in addition to other regulations, controls PHSs through the ACC.

58. HUD's policies and actions have failed to provide sufficient funding to the City and HACA to provide the Plaintiffs and other African-American city residents with decent and safe housing. HUD has further failed to enforce its maintenance requirements and has not moved to place HACA in a receivership as required by its regulation. All told, these failures deprived African-Americans of housing contrary to its own rule, mandates and regulations.

59. As a result of HUD's policies, actions and inaction, HUD abused its discretion. As a direct and proximate result, Plaintiffs, other city residents similarly situated, HACA, and the City are continuously harmed.

## COUNT II
### (Violation of Fair Housing Act, 42 U.S.C. § 3601 et seq.)

60. The City repeats and realleges the preceding paragraphs as if fully set forth herein.

61. HUD's policy of insufficiently funding HACA and the City and its non-enforcement of its requirements for providing decent, safe, and sanitary housing constitutes a violation of the Fair Housing Act, 42 U.S.C. §3604 *et seq.*, which makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

62. HUD's policies inflict disproportionate harm on Plaintiffs and other African-American city residents. Further, this policy of underfunding and inaction diminished the City's overall available housing stock and limited the availability of public housing. The disproportionate harm experienced is the direct and proximate consequence of HUD's policy of underfunding and non-enforcement of the HUD regulations.

63. Second, as a result of HUD's aforementioned policies, Plaintiffs and other City residents were denied the opportunity to live in decent, safe, and sanitary housing while similarly situated White residents were afforded safe, sanitary and decent housing. Thus, HUD's acts, policies, and practices constitute discrimination in violation of the Fair Housing Act, as amended, 42 U.S.C. §3604, and its implementing regulations in that:

    a. HUD's acts, policies, and practices have made and continue to make housing unavailable because of race in violation of 42 U.S.C. §3604(a). Specifically, HUD regulations provide in pertinent part that "[i]t shall be unlawful, because of race [or] national origin . . . to discourage or obstruct choices

13

in a community, neighborhood or development." 24 C.F.R. § 100.70(a). Such acts "include but are not limited to: (1) Discouraging any person from inspecting, purchasing, or renting a dwelling . . . because of the race [or] national origin . . . of persons in a community, neighborhood or development." 24 C.F.R. § 100.70(c)(1); and

b.  HUD's acts, policies, and practices provide different terms, conditions, and privileges of rental housing based on race, violating 42 U.S.C. § 3604(b). Specifically, HUD's regulations implementing § 3604(b) specify that "[p]rohibited actions under this section include, but are not limited to . . . failing or delaying maintenance or repairs of sale or rental dwellings" and "[l]imiting the use of privileges, services or facilities associated with a dwelling" because of race or national origin. 24 C.F.R. § 100.65.

64.  Additionally, HUD's acts, policies, and practices perpetuate segregation in violation of the Fair Housing Act, which is prohibited.  HUD's regulations implementing the Fair Housing Act state that "[a] practice has a discriminatory effect where it...creates, increases, reinforces or perpetuates segregated housing patterns because of race[.]" 24 C.F.R. § 100.500(a).

65.  Plaintiffs and other African-American City residents similarly situated and the City are aggrieved persons as defined in 42 U.S.C. § 3602 (d) and (i) and have been and are continuously harmed by HUDs' discriminatory conduct defined by 42 U.S.C. § 3602(f) and who have been injured by HUD's policies and actions.

**COUNT III**
**(Violation of Equal Protection guaranteed by the Fifth Amendment to the Constitution of the United States)**

66. The City repeats and realleges the preceding paragraphs as if fully set forth herein.

67. HUD's discriminatory practices made in reckless or callous indifference or disregard of its statutory and regulatory mandates, have deprived the Plaintiffs and other City residents similarly situated, HACA, and the City, based on the race and color of the Plaintiffs and others, of living in decent, safe and sanitary housing as that enjoyed by Caucasian persons in violation of the Civil Rights Act of 1964. As a result of HUD's policies and actions, the Plaintiffs and other City residents similarly situated, HACA, and the City have been continuously harmed.

## PRAYER FOR RELIEF

Wherefore, the City asks this Court to issue an order and judgment:

A. Declaring, pursuant to 28 U.S.C. §2201, that HUD's policy and actions in not providing sufficient funds to the City and HACA to provide decent and safe housing for the Plaintiffs and other City residents similarly situated violate HUD's responsibilities under the applicable law;

B. Declaring, under 28 U.S.C. §2201, that HUD's policy and actions in not exercising its authority to inspect and enforce its requirements for HACA to provide decent and safe housing and not providing sufficient funds to the City and HACA to provide decent and safe housing for the Plaintiffs and other City residents similarly situated violates HUD's responsibilities under the applicable law;

C. Declaring, under 28 U.S.C. § 2201, that HUD abuses its discretion acts when it chooses not to enforce PHAs like HACA to maintain their properties in a decent and safe condition.

D. Declaring, under 28 U.S.C. § 2201, that any injuries claimed by the Plaintiffs are a result of HUD policies and actions and not that of the City;

E. Declaring, under 28 U.S.C. § 2201, that HUD's policies and actions discriminate against the Plaintiffs and other City residents similarly situated due to their race, color, and socioeconomic status, which prevent HUD from providing sufficient funding for and enforcing the requirements of the law that HUD provides decent and safe housing violates the Fair Housing Act;

F. Declaring, under 28 U.S.C. § 2201, that HUD's policies and actions discriminate against the Plaintiffs and other City residents similarly situated due to their race, color, and socioeconomic status, which prevent HUD from providing sufficient funding for and enforcing the requirements of the law that HUD provides decent and safe housing violates the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States;

G. Direct HUD to place HACA under an administrative receivership pursuant to 42 U.S.C. 1437d, or, alternatively, place HACA under judicial receivership, in order to conduct the affairs of the Housing Authority of the City of Annapolis in a manner consistent with statutory, regulatory, and contractual obligations of the Housing Authority of the City of Annapolis and in accordance with any additional terms and conditions the Court may provide;

H. Preliminarily and permanently enjoining HUD from discriminating against the Plaintiffs and other City residents similarly situated, the City and HACA due to the race and color of the Plaintiffs and other City residents similarly situated;

I. Preliminarily and permanently enjoining HUD Defendants from imposing policies and taking actions that prohibit it from providing sufficient funds necessary for the City and

16

HACA to provide decent and safe housing for Plaintiffs and other City residents similarly situated;

J.      Preliminarily and permanently enjoining HUD Defendants from imposing policies and taking actions that prohibit it from enforcing its authority to cause HACA to provide decent and safe housing for Plaintiffs and other City residents similarly situated; and

K.      Granting any and all other relief the Court deems just and proper.

Respectfully submitted,

**CITY OF ANNAPOLIS**
**OFFICE OF LAW**


By:      /s/
D. Michael Lyles, City Attorney #13120
160 Duke of Gloucester St.
Annapolis, MD 21401
(410)-263-7954
(410)-268-3916 FAX
dmlyles@annapolis.gov


By:      /s/
Joel Braithwaite, Assistant City Attorney #28081
160 Duke of Gloucester St.
Annapolis, MD 21401
(410)-263-7954
(410)-268-3916 FAX
jabraithwaite@annapolis.gov


By:      /s/
Mark L. Fulton, III, Assistant City Attorney #30401
160 Duke of Gloucester St.
Annapolis, MD 21401
(410)-263-7954
(410)-268-3916 FAX
mlfulton@annapolis.gov

**CERTIFICATE OF SERVICE**

       The undersigned attorney hereby certifies that, on October 14, 2022, a true and correct copy of the foregoing Third-Party Complaint of Defendant City of Annapolis Third-Party Defendant Department of Housing and Urban Development was electronically filed, using the Court's CM/ECF system, which caused a copy of this report to be served upon Counsel of Record:

P. Joseph Donahue, Esquire
The Donahue Law Firm, LLC
18 West Street
Annapolis, Maryland 21401
pjd@thedonahuelawfirm.com
*Attorney for Plaintiffs in Fisher*

Emanwel J. Turnbull
Peter A. Holland
914 Bay Ridge Rd. Ste 230
Annapolis, MD 21403
eturnbull@hollandlawfirm.com
peter@hollandlawfirm.com
*Attorney for Plaintiffs in Fisher*

Carrie Blackburn Riley
Blackburn Riley LLC
Bosley Hall
222 Courthouse Court
Suite 2F
Baltimore, MD 21204
cbr@blackburnriley.com
Attorney For Housing Authority of the City of Annapolis


                                                */s/ Mark L. Fulton, III*
                                                Mark L. Fulton, III